MICHAEL LEHNERS, ESQ.
429 Marsh Ave.
Reno, Nevada 89509
Nevada Bar Number 003331
(775) 786-1695
Email: michaellehners@yahoo.com
Attorney for Plaintiff, Chapter 7 Trustee
Christopher P. Burke

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

oOo

IN RE

AFFORDABLE PATIOS & SUNROOMS
dba RENO PATIO AND FIREPLACES,

                Debtor(s).

CHRISTOPHER P. BURKE, Chapter
Seven Trustee
                Plaintiff,

vs.

AFFORDABLE PATIOS & SUNROOMS
dba RENO PATIO AND FIREPLACES, a
Nevada Corporation; RENO PATIO AND
FIREPLACES, LLC a Nevada limited
liability company, MILL STREET AUTO,
a Fictitious entity registered to RENO
PATIO AND FIREPLACES and
RICHARD TAYLOR, an individual

                Defendants.

BK-N- 20-50017-BTB
CHAPTER 7

Adv. No. 20-

ADVERSARY COMPLAINT

Plaintiff, Christopher P. Burke, Chapter 7 Trustee ("Plaintiff" or "Trustee") for the

bankruptcy estate of Affordable Patios & Sunrooms dba Reno Patio and Fireplaces ("Debtor" or

"Affordable"), by and through undersigned counsel Michael Lehners, Esq., files the following

Adversary Complaint ("Complaint") against defendants Affordable Patios & Sunrooms dba

Reno Patio and Fireplaces; Reno Patio and Fireplaces, LLC a Nevada limited liability company,

Mill Street Auto, and Richard Taylor:

1

**CONSENT TO FINAL ORDER**

1.      Pursuant to LR 7008, the Trustee consents to this matter being heard, and to the entry of final orders and judgment, by the above captioned Bankruptcy Court.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this adversary proceeding pursuant to 11 U.S.C. §§105, 541, 542, 544 and 28 U.S.C. §§157(a)-(b) and 1334, and various other applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "FRBP"), and the laws of the United States of America.

3.      This is a core proceeding, including (without limitation) under 28 U.S.C. §§157(b)(2)(A), (E), and (O).

4.      Venue is proper in this Court under 28 U.S.C. §§1408 and 1409.

5.      This adversary proceeding is brought under 11 U.S.C. §§105, 541, 542, 544; 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act"); and FRBP 7001 and 7065.

**PARTIES**

6.      Debtor is a Nevada corporation, organized on or about April 4, 2003.

7.      Defendant Reno Patio & Fireplaces is a Nevada limited liability company organized on or about October 16, 2013.

8.      Defendant Richard Taylor is an individual residing in Washoe County, Nevada.

**GENERAL ALLEGATIONS**

9.      The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

10.     The Debtor filed the instant bankruptcy on January 7, 2020.

11.     Debtor, Affordable Patios & Sunrooms, held three contractor's licenses issued by the Nevada State Contractor's Board, License No. 56075, No. 71993, and No. 72332.

2

12.    Debtor, Affordable Patios & Sunrooms, on its Nevada contractors licenses claims to do business as Reno Patio & Fireplaces. A copy of the Contractor's License Search Results are attached as Exhibit "1".

13.    Debtor, Affordable Patios & Sunrooms, held three licenses, which entailed a C-14G contractor's license, which authorized it to do Prefabricated Steel Structures, a C-14H contractor's license which authorized it to do Awnings and Louvres, and a C-39 license authorizing it to Install Heater and a class C-3 authorizing it to do Carpentry Maintenance and Minor Repairs.

14.    When conducting business Debtor, Affordable Patios & Sunrooms, would have customers sign contracts bearing the following name and address: Reno Patio & Fireplaces, 910 Glendale Avenue, Sparks, Nevada 89431.

15.    On information and belief, none of the contracts between the Debtor and its customers bore the name Affordable Patios & Sunrooms, Inc.

16.    On or about January 23, 2020 the Nevada State Contractors Board found Affordable Patios & Sunrooms, dba Reno Patio & Fireplaces were in violation of 32 counts, including the failure to comply with the terms of a contract, abandoning construction projects without legal excuse, abandonment of projects when the completed portion is less than payment received, failure to prosecute construction projects with reasonable diligence, diversion of money or property, failure to establish financial responsibility, failure to comply with a notice to correct, bidding in excess of the license limit, substandard workmanship, and failure to comply with a Board request for information. The licenses were revoked. The licensee was fined $72,750. The Order was entered on February 4, 2020. The Administrative Law Judge Allison, also referred the case to the Washoe County District Attorney's office for possible prosecution. A true and correct copy of that Default Order has been attached as Exhibit "2".

17.    Reno Patio & Fireplaces, LLC owns the real property located at 910 Glendale Avenue, Sparks, Nevada 89431.

3

18.    This property is currently listed for sale with Krch Realty. A copy of the for sale sign has been attached as Exhibit "3".

19.    On or about January 24, 12020, Krch Realtor, Phillip Sears called the Trustee and stated he had a letter of intent to purchase 910 Glendale and asked the Trustee what information he needed.

20.    Trustee told Sears what documents he needed.

21.    After a week of not receiving said documents, the Trustee contacted Sears and asked where the documents were.

22.    Sears laughed and stated he did not need to provide any documents as 910 Glendale was owned by a different entity, Reno Patio and Fireplaces, LLC. To which Trustee responded he may get pulled into court over this deal.  Finally, about a week later, and with the help of a subpoena, documents were received from both Krch and Sears.

23.    Defendant, Richard Taylor has been using Affordable Patios & Sunrooms' bank account for his own personal expenses. Attached as Exhibit "4" is an itemization put together by the Chapter 7 Trustee showing Affordable Patios and Sunrooms paid for child support, dental bills, Sirux XM, ITunes, Playstation network, HOA dues to Somerset, GoDaddy, Direct TV, Quicken Loans Mortgage payments (presumably on the 910 Glendale building or Mr. Taylor's residence), Norman's Rare Guitars, Guitar Center.com, Pay Pal for high heel shoes, Clear Vision and Wingfield Springs Community Association.

24.    Debtor, Affordable Patios & Sunrooms has registered the name of Reno Patio & Fireplace as its fictitious name. A copy of a Washoe County Fictitious name search has been attached as Exhibit "5".

25.    Reno Patio & Fireplace, LLC also does business as Mill Street Auto. A copy of a Washoe County Fictitious name search has been attached as Exhibit "6".

26.    On information and belief, Debtor, Affordable Patios & Sunrooms has funnelled money to Mill Street Auto.

4

27.    On information and belief, Debtor, Affordable Patios & Sunrooms, Reno Patio & Fireplaces and Mr. Taylor have commingled assets, including funds received from customers of the Debtor for work never performed.

28.    On information and belief, Reno Patio & Fireplaces had approximately $29,000 on deposit with Nevada State Bank ("NSB").

29.    After being appointed as Trustee, NSB called Trustee Burke and spoke with him, informing the Trustee that the funds were assets of Affordable Patios & Sunrooms and property of the bankruptcy estate.

30.    NSB stated they would forward those funds to Trustee.

31.    When that did not happen, the Trustee called NSB who had reversed course and stated that the $29,000 was actually funds of Reno Patio and Fireplace LLC which had a different E.I.N.

32.    On information and belief, Mr. Taylor went to the bank and withdrew the entire $29,000, and he has refused to account for it.

33.    Despite numerous demands by the Trustee, Debtor, Affordable Patios & Sunrooms, Reno Patio & Fireplaces has not turned over financial information which precludes the Trustee from completing his duties under the bankruptcy code.  This includes tax returns and bank statements.  In addition, only limited information has been provided on assets.

### FIRST CLAIM FOR RELIEF
### Unfair and Deceptive Practices

34.    The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

35.    Pursuant to 11 U.S.C. §323 the Trustee is the representative of the Estate and has the power to file suit on the Debtor's behalf.

36.    The Customers entered into contracts with the Debtor for various repairs on their homes and real property.

37.    On information and belief, a vast majority of these obligations were consumer debts.

38.    On information and belief each of the Customers paid Richard Taylor in full for or paid him a deposit for the work to be performed by the Debtor.

39.    On information and belief, Richard Taylor was the corporate officer responsible for performing the work for the Customers, and that Richard Taylor had control over the deposits that were paid to the Debtor by the Customers.

40.    Instead of using the deposits to perform the work for the Customers, Richard Taylor converted the funds to his own use and for other purposes.

41.    NRS 41.600(1) states that an action may be brought by any person who is a victim of consumer fraud.

42.    NRS 41.600(2)(e) defines consumer fraud as a deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive.

43.    Pursuant to NRS 598.0923(3) a person engages in a deceptive trade practice when it violates a state or federal statute or regulation relating to the sale or lease of goods or services.

44.    Pursuant to NRS 598.0923(4) a person engages in a deceptive trade practice when it uses coercion, duress or intimidation in a transaction.

45.    The actions of Richard Taylor in accepting deposits and failing to perform the work violated numerous provisions of Chapter 624 of the Nevada Revised Statutes, including but not limited to NRS 624.3016(1) which prohibits any fraudulent or deceitful act committed in the capacity of a contractor, including, without limitation, misrepresentation or the omission of a material fact and NRS 624.3012(1) which prohibits the diversion of money or property received for the completion of a specific construction project. These actions of Richard Taylor rendered the Debtor liable under NRS 41.600 to each of the Customers, and that as a result, the Debtor has the right to seek indemnification and contribution for the actions of Richard Taylor that rendered the Debtor liable to said Customers.

6

46.     Richard Taylor performed these actions with a conscious disregard for the rights of the Customers which constituted an act of subjecting them to cruel and unjust hardship.

47.     The actions of Richard Taylor described herein are of a detestable conduct which were performed with a conscious disregard of the rights of the Customers.

48.     As a result of these unfair and deceptive practices, the Plaintiff is entitled to actual damages, punitive damages not to exceed $300,000.00, attorney fees and costs of suit.

SECOND CLAIM FOR RELIEF

**Conversion**

49.     The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

50.     The Customers entered into contracts with the Debtor for various repairs on their homes and real property.

51.     On information and belief each of the Customers paid Richard Taylor in full for or paid him a deposit for the work to be performed by the Debtor.

52.     On information and belief, Richard Taylor was the corporate officer responsible for performing the work for the Customers, and that Richard Taylor had control over the deposits that were paid to the Debtor by the Customers.

53.     Instead of using the deposits to perform the work for the Customers, Richard Taylor converted the funds to his own use and for other purposes.

54.     Richard Taylor's actions in using the deposits for his own use instead of applying them for the purpose for which they were given to the Debtor were distinct acts of dominion wrongfully exerted over the Debtor's property in denial of, or inconsistent with its title or rights therein or in derogation, exclusion, or defiance of such title or rights.

55.     These intentional actions and conduct of Richard Taylor were wrongful acts that were done intentionally and which necessarily produced harm and were without just cause or excuse.

56.     As a result of these actions, the Plaintiff is entitled to damages according to proof at the time of trial.

7

## THIRD CLAIM FOR RELIEF
### Embezzlement

57.    The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

58.    The Customers entered into contracts with the Debtor for various repairs on their homes and real property.

59.    On information and belief each of the Customers paid Richard Taylor in full for or paid him a deposit for the work to be performed by the Debtor. These funds were property of the Debtor.

60.    The Debtor authorized Richard Taylor to collect Customer deposits on its behalf and in so doing, the Debtor placed the deposits in the possession of Mr. Taylor, who was a non-owner of the funds.

61.    While in possession of the Customer deposits, Richard Taylor appropriated the deposits to a use other than which they were entrusted.

62.    Richard Taylor's misappropriation of the Customer deposits were performed under circumstances indicating fraud.

63.    As a result of these actions, the Plaintiff is entitled to damages according to proof at the time of trial.

## FOURTH CLAIM FOR RELIEF
### Constructive Trust

64.    The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

65.    Pursuant to 11 U.S.C. §323 the Trustee is the representative of the Estate and has the power to file suit on the Debtor's behalf.

66.    Pursuant to 11 U.S.C. §544 the Trustee has the hypothetical powers under state law of one who has:

(a)    a judicial lien on all property on which a creditor on a simple contract could
       have obtained such a judicial lien, whether or not such a creditor exists;

8

(b)    filed an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(c)    the rights of a bona fide purchaser of real property, whether or not such a purchaser exists

67.    Pursuant to both 11 U.S.C. §323 and 11 U.S.C. §544 the Trustee is entitled to the state law remedy of a constructive trust as set forth within this claim.

68.    On information and belief, Richard Taylor has engaged in a pattern and practice of defrauding the Debtor's Customers and converting or embezzling the Customer deposits, which was property of the Debtor, for his own use.

69.    Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto were influenced and governed by Richard Taylor.

70.    Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC; Mill Street Auto and Richard Taylor had such unity of interest and ownership that each entity and Mr. Taylor are inseparable from each other.

71.    Adherence to the notion that Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto are entities separate from Mr. Taylor would sanction fraud or promote a manifest injustice.

72.    Mr. Taylor caused Affordable Patios and Sunrooms to pay for child support, dental bills, Sirux XM, ITunes, Playstation network, HOA dues to Somerset, GoDaddy, Direct TV, Quicken Loans Mortgage payments (presumably on the 910 Glendale building or Mr. Taylor's residence), Norman's Rare Guitars, Guitar Center.com, Pay Pal for high heel shoes, Clear Vision and Wingfield Springs Community Association.

73.    Based upon this commingling of assets, unity of interest and absolute control manifested by Mr. Taylor, the circumstances under which the 910 Glendale property was acquired by Reno Patio & Fireplaces, LLC makes it inequitable that it should be retained by this entity which holds the legal title.

9

74.    As the individual that controlled both Affordable Patios & Sunrooms, Inc. and Reno Patio & Fireplaces, LLC, a confidential relationship existed between Mr. Taylor and both entities.

75.    The imposition of a constructive trust on the 910 Glendale property is necessary to prevent a failure of justice.

76.    Reno Patio & Fireplaces, LLC, as the holder of legal title to the Glendale property is deemed to be a trustee of that property for the benefit of the bankruptcy estate which in good conscience is entitled to it.

77.    The Plaintiff is entitled to the equitable remedy of a constructive trust with respect to the Glendale property.

## FIFTH CLAIM FOR RELIEF
### Alter Ego

78.    The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

79.    Pursuant to 11 U.S.C. §323 the Trustee is the representative of the Estate and has the power to file suit on the Debtor's behalf.

80.    Pursuant to 11 U.S.C. §544 the Trustee has the hypothetical powers under state law of one who has:

    (a)    a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

    (b)    filed an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

    (c)    the rights of a bona fide purchaser of real property, whether or not such a purchaser exists

81.    Pursuant to both 11 U.S.C. §323 and 11 U.S.C. §544 the Trustee is entitled to the state law remedy of alter ego rights as set forth within this claim.

82.    The Customers entered into contracts with the Debtor for various repairs on their homes and real property.

83. On information and belief each of the Customers paid Richard Taylor in full for or paid him a deposit for the work to be performed by the Debtor.

84. On information and belief, Richard Taylor was the individual responsible for performing the work for the Customers, and that Richard Taylor had control over the deposits that were paid to the Debtor by the Customers. These funds were property of the Debtor.

85. Instead of using the deposits to perform the work for the Customers, Richard Taylor converted the funds to his own use and for other purposes.

86. Richard Taylor was the individual that controlled, influenced and governed both Affordable Patios & Sunrooms, Inc. and Reno Patio & Fireplaces, LLC.

87. By taking dominion and control over the Customer deposits, there was a unity of interest and ownership between Mr. Taylor; Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto so that one is inseparable from the other.

88. Adherence to the notion of Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto being entities separate from Mr. Taylor would sanction fraud or promote a manifest injustice

89. The Plaintiff is entitled to declaratory relief that Mr. Taylor; Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto are the alter egos of each other.

SIXTH CLAIM FOR RELIEF
**Substantive Consolidation**

90. The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

91. The Customers entered into contracts with the Debtor for various repairs on their homes and real property.

92. On information and belief each of the Customers paid Richard Taylor in full for or paid him a deposit for the work to be performed by the Debtor.

93.    On information and belief, Richard Taylor was the individual responsible for performing the work for the Customers, and that Richard Taylor had control over the deposits that were paid to the Debtor by the Customers. These funds were property of the Debtor.

94.    Instead of using the deposits to perform the work for the Customers, Richard Taylor converted the funds to his own use and for other purposes.

95.    Richard Taylor was the individual that controlled, influenced and governed both Affordable Patios & Sunrooms, Inc. and Reno Patio & Fireplaces, LLC.

96.    Instead of using the deposits to perform the work for the Customers, Richard Taylor converted the funds to his own use and for other purposes.

97.    Richard Taylor, Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto dealt with Customers as a single economic unit.

98.    The Customers did not rely upon the separate identity of Richard Taylor, Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto when extending credit.

99.    The financial affairs of Richard Taylor, Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto are so entangled that consolidation will benefit all creditors.

100.    The affairs between Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto are so entangled that unraveling them would require significant time, effort, and expense, and there was no realistic assurance that the result would be accurate or without potential injury.

101.    The Debtor, Reno Patio & Fireplaces, LLC and Mill Street Auto were but instrumentalities of Richard Taylor with no separate existence of their own.

102.    There existed a unity of interest and ownership common to the Debtor, Reno Patio & Fireplaces, LLC and Mill Street Auto and Richard Taylor such that there was commingling of assets.

103. There was no clear demarcation between the affairs of the Debtor, Reno Patio & Fireplaces, LLC and Mill Street Auto and Richard Taylor.

104. Adhering to the separate artificial entities theory would result in an injustice to the Debtor's creditors.

105. The Plaintiff is entitled to an order substantively consolidating the debts and assets of the Debtor, Reno Patio & Fireplaces, LLC and Mill Street Auto and Richard Taylor.

106. Pursuant to 11 U.S.C. §542, the Plaintiff is entitled to an order directing the turnover from Richard Taylor of all his non-exempt assets, both community and separate.

107. Pursuant to 11 U.S.C. §542, the Plaintiff is entitled to an order directing the turnover from Reno Patio & Fireplaces, LLC of all its assets, including but not limited to, the 910 Glendale property.

SEVENTH CLAIM FOR RELIEF
**Breach of Fiduciary Duty**

108. The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

109. As director and officer of the Debtor, Richard Taylor owed the Debtor a fiduciary duty of trust and confidence.

110. The Customers entered into contracts with the Debtor for various repairs on their homes and real property.

111. On information and belief each of the Customers paid Richard Taylor in full for or paid him a deposit for the work to be performed by the Debtor. These funds were property of the Debtor.

112. On information and belief, Richard Taylor was the Debtor's agent responsible for performing the work for the Customers, and that Richard Taylor had control over the deposits that were paid to the Debtor by the Customers.

113. Instead of using the deposits to perform the work for the Customers, Richard Taylor converted the funds to his own use and for other purposes.

13

114.   Richard Taylor's actions in using the deposits for his own use instead of applying them for the purpose for which they were given to the Debtor were a breach of the fiduciary duty he owed to the Debtor.

115.   As a direct and proximate result of this breach of fiduciary duty, the Plaintiff is entitled to recover damages according to proof at the time of trial.

EIGHTH CLAIM FOR RELIEF
**Fraudulent Transfer 11 U.S.C. §548(a)(1)**

116.   The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

117.   The Customers entered into contracts with the Debtor for various repairs on their homes and real property.

118.   On information and belief each of the Customers paid Richard Taylor in full for or paid him a deposit for the work to be performed by the Debtor.

119.   On information and belief, Richard Taylor was the Debtor's agent responsible for performing the work for the Customers, and that Richard Taylor had control over the deposits that were paid to the Debtor by the Customers.

120.   Instead of using the deposits to perform the work for the Customers, Richard Taylor converted the funds to his own use and for other purposes.

121.   The Customer deposits were property of the Debtor when paid by each Customer to Richard Taylor or to the Debtor.

122.   On or after Richard Taylor transferred property of the Debtor to himself and possibly other entities or persons with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

123.   That by reason of the foregoing, Plaintiff may avoid and recover said transfers pursuant to Section 548(a)(1) of Title 11, United States Code.

NINTH CLAIM FOR RELIEF
**Fraudulent Transfer 11 U.S.C. §548(a)(2)**

14

124.    The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

125.    The Customers entered into contracts with the Debtor for various repairs on their homes and real property.

126.    On information and belief each of the Customers paid Richard Taylor in full for or paid him a deposit for the work to be performed by the Debtor.

127.    On information and belief, Richard Taylor was the Debtor's agent responsible for performing the work for the Customers, and that Richard Taylor had control over the deposits that were paid to the Debtor by the Customers.

128.    Instead of using the deposits to perform the work for the Customers, Richard Taylor converted the funds to his own use and for other purposes.

129.    The Customer deposits were property of the Debtor when paid by each Customer to Richard Taylor or to the Debtor.

130.    On or after Richard Taylor transferred property of the Debtor to himself and possibly other entities or persons.

131.    At the time Richard Taylor caused these transfers to be made by the Debtor, the Debtor received less than a reasonably equivalent value in exchange for such transfer or obligation.

132.    At the time Richard Taylor caused these transfers to be made by the Debtor, the Debtor was insolvent on the date that such transfer was made, or became insolvent as a result of such transfer.

133.    That by reason of the foregoing, Plaintiff may avoid and recover said transfers pursuant to Section 548(a)(2) of Title 11, United States Code.

TENTH CLAIM FOR RELIEF

**Fraudulent Transfer NRS 112.140 et. seq.**

134.    The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

135.   Under 11 U.S.C. §544(b)(1) the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title.

136.   Pursuant to 11 U.S.C. §323 the Trustee is the representative of the Estate and has the power to file suit on the Debtor's behalf.

137.   The Customers entered into contracts with the Debtor for various repairs on their homes and real property.

134.   On information and belief each of the Customers paid Richard Taylor in full for or paid him a deposit for the work to be performed by the Debtor.

135.   On information and belief, Richard Taylor was the Debtor's agent responsible for performing the work for the Customers, and that Richard Taylor had control over the deposits that were paid to the Debtor by the Customers.

136.   Instead of using the deposits to perform the work for the Customers, Richard Taylor converted the funds to his own use and for other purposes.

137.   The Customer deposits were property of the Debtor when paid by each Customer to Richard Taylor or to the Debtor.

138.   On or after Richard Taylor transferred property of the Debtor to himself and possibly other entities or persons.

139.   The transfers referenced in the preceding paragraph were made with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

140.   At the time Richard Taylor caused these transfers to be made by the Debtor, the Debtor received less than a reasonably equivalent value in exchange for such transfer or obligation.

141.   At the time Richard Taylor caused these transfers to be made by the Debtor, the Debtor was insolvent on the date that such transfer was made, or became insolvent as a result of such transfer.

142.    That by reason of the foregoing, Plaintiff may avoid and recover said transfer pursuant to NRS 112.140 et. seq. and 11 U.S.C. §544.

ELEVENTH CLAIM FOR RELIEF

**Preference  11  U.S.C.  §547**

143.    The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

144.    Richard Taylor is an insider of the Debtor as that term is defined by 11 U.S.C. §101(31).

145.    On information and belief, the Debtor was indebted to Richard Taylor.

146.    Within the one year period prior to the Debtor filing bankruptcy, Richard Taylor received payments of unknown amounts from the Debtor.

147.    These transfers were made while the Debtor was insolvent.

148.    These transfers were made on or within one year before the filing of the petition herein.

149.    These transfers enabled Richard Taylor to receive more money than he would have received had this been a case under Chapter 7 of Title 11, United States Code, had such transfer not been made and said Defendant received payment of the Debtor's indebtedness to the extent provided by the provisions of said Title 11.

150.    That by reason of the foregoing, Plaintiff may avoid and recover said transfers pursuant to Section 547(b) of Title 11, United States Code.

TWELFTH CLAIM FOR RELIEF

**Turnover  11  U.S.C.  §542**

151.    The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

152.    On July 21, 2016 the Debtor owned or had an interest in the real property located at 910 Glendale Avenue.

153.    The Glendale property is property of the Estate that the trustee may use, sell, or lease under section 363 of this title.

17

154.    On information and belief, Richard Taylor and/or Reno Patio & Fireplaces, LLC has access to or is in possession of the Glendale property.

155.    Pursuant to 11 U.S.C. §542(a) Richard Taylor is required to deliver to the trustee, and account for, such property or the value of said Vehicles.

156.    The Plaintiff is entitled to an Order directing Richard Taylor and/or Reno Patio & Fireplaces, LLC to deliver the Glendale property to the Trustee and account for said property.

THIRTEENTH CLAIM FOR RELIEF
11  U.S.C.  §550

157.    The Plaintiff incorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

158.    That by reason of the foregoing, Plaintiff may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from the Transferees pursuant to the provisions of 11 U.S.C. §550(a).

**WHEREFORE**, Plaintiff prays for Judgment against the Defendants above named as follows:

1.    On the FIRST claim for relief, actual damages, punitive damages not to exceed $300,000.00, attorney fees and costs of suit.

2.    On the SECOND claim for relief, damages according to proof at the time of trial.

3.    On the THIRD claim for relief, damages according to proof at the time of trial.

4.    On the FOURTH claim for relief, the equitable remedy of a constructive trust with respect to the Glendale property.

5.    On the FIFTH claim for relief, declaratory relief that Mr. Taylor; Affordable Patios & Sunrooms, Inc; Reno Patio & Fireplaces, LLC and Mill Street Auto are the alter egos of each other.

6.    On the SIXTH claim for relief, an order substantively consolidating the debts and assets of the Debtor, Reno Patio & Fireplaces, LLC and Mill Street Auto and Richard Taylor and for the turnover of Mr. Taylor's non-exempt assets as well as all of the assets of Reno Patio & Fireplaces, LLC, including but not limited to, the 910 Glendale property.

7.    On the SEVENTH claim for relief, damages according to proof at the time of trial.

8.    On the EIGHTH claim for relief, for avoidance and recovery said transfers.

9.    On the NINTH claim for relief, for avoidance and recovery said transfers.

10.    On the TENTH claim for relief, for avoidance and recovery said transfers.

11.    On the ELEVENTH claim for relief, for avoidance and recovery said transfers.

12.    On the TWELFTH claim for relief, an Order directing Richard Taylor and/or Reno Patio & Fireplaces, LLC to deliver the Glendale property to the Trustee and account for said property.

13.    On the THIRTEENTH claim for relief, recovery of the property transferred, or the value of such property from the Transferees.

Dated: This __14__ day of __February__, 2020

By: _____
Michael Lehners, Esq.
429 Marsh Ave.
Reno, Nevada 89509
Nevada Bar Number 003331

19

## Exhibit List

| Exhibit 1 | Contractor's License Search Results |
| Exhibit 2 | Administrative Law Judge's Default Order |
| Exhibit 3 | Krch Realty For Sale Sign |
| Exhibit 4 | Chapter 7 Trustee Bank Statement Summary |
| Exhibit 5 | Affordable Patios & Sunrooms' Fictitious Name Regarding Reno Patio & Fireplace |
| Exhibit 6 | Reno Patio & Fireplace, LLC's Fictitious Name Regarding Mill Street Auto |

# Exhibit 1

# Exhibit 1



nevada ™ ℗
state contractors board

**Measure up...use licensed contractors.**

(http://www.nscb.nv.gov/)

# License Search Results

## Search Criteria
License Number: 56075

| Principal Name | Legal Business Name | DBA Name | License Number | NV Business ID | Primary Classification | Status | City | State |
|---|---|---|---|---|---|---|---|---|
| | AFFORDABLE PATIOS & SUNROOMS | RENO PATIO & FIREPLACES | 0056075 | NV20031314127 | C14 - Steel Reinforcing and Erection | Suspended | SPARKS | NV |

New Search

2019-12-06 01:14:29 PM

# Exhibit 2

# Exhibit 2

NEVADA STATE CONTRACTORS BOARD

| | |
|---|---|
| In the matter of | Investigative Case Nos. 30052657, 30052913, 30052935, 30053109, 30053174, 30053176, |
| Affordable Patios & Sunrooms, dba Reno Patio & Fireplaces, Richard Garriga Taylor, President and Qualified Individual, | |
| License Nos. 56075, 71993, 72332, | |
| Respondent(s) | |

## Default Order

Pursuant to the authority conferred upon it by NRS 624.140 and NRS 624.170, the Nevada State Contractors Board delegated its authority to hear this case to Administrative Law Judge Noah Allison.

The Board alleged thirty-two violations against the Respondent: 1) Failure to comply - NRS 624.301(5), 2) Abandonment – NRS 624.301(2), 3) Abandonment  NRS 624.301(1), 4) Failure to prosecute – NRS 624.301(4), 5) Diversion - NRS 624.3012(1), 6) Excess of limit - NRS 624.3015(2), 7) Failure to comply - NRS 624.302(6), 8) Failure to comply - NRS 624.301(5), 9) Abandonment – NRS 624.301(1), 10) Abandonment – NRS 624.301(2), 11) Failure to prosecute – NRS 624.301(4), 12) Diversion - NRS 624.3012(1), 13) Failure to comply - NRS 624.301(5), 14) Abandonment – NRS 624.301(1), 15) Failure to prosecute – NRS 624.301(4), 16) Diversion - NRS 624.3012(1), 17) Failure to comply - NRS 624.302(6), 18) Failure to comply - NRS 624.301(5), 19) Abandonment – NRS 624.301(1), 20) Abandonment – NRS 624.301(2), 21) Failure to prosecute – NRS 624.301(4), 22) Diversion - NRS 624.3012(1), 23) Substandard workmanship - NRS 624.3017(1), 24) Failure to correct - NRS 624.3013(5), 25) Failure to comply - NRS 624.301(5), 26) Abandonment – NRS 624.301(1), 27) Abandonment – NRS 624.301(2), 28) Failure to prosecute – NRS 624.301(4), 29) Diversion - NRS 624.3012(1), 30) Failure to comply - NRS 624.302(6), 31) Financial responsibility - NRS 624.3013(3), and 32) Joint liability - NRS 624.3018(2).

This matter having come before the NSCB on January 22, 2020, on its posted agenda, and the Licensee, Affordable Patios & Sunrooms, dba Reno Patio & Fireplaces, license numbers 56075, 71993 and 72332 was served with a copy of the Notice of Hearing, Complaint and Requirement to Answer, and

failing to Answer and/or otherwise defend the Complaint, and good cause appearing, ALJ Allison finds
and concludes as follows:

## 1.0    Findings of Fact

1.    Reno Patios & Fireplaces ("Respondent") was a licensed contractor in the State of
Nevada, license number 56075, Class C-14G (Prefabricated Steel Structures), C-14H (Awnings and
Louvres), issued on July 8, 2003, with a $50,000 monetary license limit.

2.    License number 56075 is held as a corporation with Richard Garriga Taylor as President
and Qualified Individual.

3.    The license is suspended, summary suspension as of November 19, 2019.

4.    Respondent was issued license number 71993 Class C-39 (Installing Heaters) issued on
October 3, 2008, with a $50,000 monetary license limit.

5.    License number 71993 is held as a corporation with Richard Garriga Taylor as President
and Qualified Individual.

6.    The license is cancelled, not renewed as of August 2, 2019.

7.    Respondent was issued license number 72332 Class C-3 (Carpentry Maintenance and
Minor Repairs) issued on December 5, 2008, with a $200,000 monetary license limit.

8.    License number 72332 is held as a corporation with Richard Garriga Taylor as President
and Qualified Individual.

10.    The license is suspended, summary suspension as of November 19, 2019.

11.    The address of record for license numbers 56075, 71993, 72332 is 910 Glendale Avenue,
Sparks, Nevada 89431.

12.    Respondent was served the Notice of Hearing, Complaint and Requirement to Answer to
its address of record by certified mail dated December 19, 2019.

13.    Respondent failed to file an Answer or responsive pleading to the Complaint.

14.    On or about August 14, 2018, Respondent entered into a written contract with Chen
Kwok ("Kwok") for the installation of a patio enclosure located at 275 West Street, Reno, Nevada 89501
("Kwok Project") for a contract amount of $60,771. Kwok paid Respondent a total of $21,269.85.

15.    The Kwok contract stipulated that the work would be done "8 to 10 weeks after 02/14/19", which would be April 11, 2019 to April 25, 2019.

16.    On or about August 27, 2019, Kwok filed a workmanship complaint with the Board against Respondent.

17.    The work had not been completed.

18.    Respondent contracted with Kwok for the sum of $60,771, in excess of the $50,000 limit of his license.

19.    On or about October 8, 2019, the Board investigator sent Respondent an opening letter requesting a written response to the allegations by October 22, 2019.

20.    Respondent did not provide a written response.

21.    On or about June 18, 2019, Respondent entered into a contract with Lewis Mattice ("Mattice") for the installation of a solid patio cover at 11455 Verazae Drive, Reno, Nevada ("Mattice Project") for a total contract amount of $9,378. Mattice paid Respondent a total of $4,689.38 towards the contract amount.

22.    On or about October 1, 2019, Mattice filed a workmanship complaint with the Board against Respondent.

23.    Respondent did not obtain the required permit or start any work on the patio enclosure.

24.    The Mattice project is 0% completed.

25.    On or about April 29, 2019, Respondent entered into a written contract with John Cossavela ("Cossavela") for the installation of a drop shade at the Cossavela residence located at 445 Kathy Terrace, Sparks, Nevada 89436 ("Cossavela Project") for a contract amount of $1,871. Cossavela paid Respondent a total of $1,122.60 towards the contract amount.

26.    Respondent installed various elements of the drop shade through September 4, 2019.

27.    Cossavela last spoke with Respondent on September 27, 2019.

28.    There has been no further contact with or from Respondent.

29.    The Cossavela project remains incomplete.

30.    On or about October 4, 2019, Cossavela filed a workmanship complaint with the Board against Respondent.

31.    On or about October 8, 2019, the Board investigator sent Respondent an opening letter requesting a written response to the allegations by October 22, 2019.

32.    Respondent has not provided a written response.

33.    On or about September 6, 2018, Respondent entered into a contract with Monique Festinese ("Festinese") for the installation of a patio enclosure at the Festinese residence located at 3347 Poco Rey Court, Sparks, Nevada ("Festinese Project") for a total contract amount of $45,871. Festinese paid Respondent a total of $29,189.60 towards the contract amount. Festinese is 78 years old.

34.    Respondent did not obtain the permit or started any work on the patio enclosure.

35.    The Festinese Project is 0% completed.

36.    On or about October 24, 2019, Festinese filed a workmanship complaint with the Board against Respondent.

37.    On or about September 8, 2018, Respondent entered into contract with Leslie Zimmerman ("Zimmerman") for the installation of a new deck and patio cover at Zimmerman residence located at 906 Bates Avenue, Reno, Nevada 89502 in the amount of $43,811.  Zimmerman paid Respondent in full.

38.    On or about March 1, 2019, the project was substantially completed.

39.    On or about November 5, 2019, Zimmerman filed a workmanship complaint with the Board against Respondent.

40.    On or about November 19, 2019, Investigator Gary Hoid conducted a job site meeting at the Zimmerman residence and validated the following workmanship items:

ITEM 1: OVERALL DECK: The deck as constructed is not in alignment with the residence.

ITEM 2. CENTER BEAM: There is a dent in the material of the center beam over the north vertical post.

ITEM 3. SOUTH END VERTICAL POST: The post has twisted causing the decking to crack and separate.

ITEM 4. DECK: The perimeter trim is not secured properly and has separated away from each independent piece.

41. On or about November 19, 2019, the Respondent's licenses were summarily suspended, therefore, he can no longer perform any work.

42. Respondent offered no resolution to the workmanship items.

43. On or about November 21, 2019, Respondent was issued a Notice to Correct.

44. Respondent failed to comply with the Board's Notice to Correct.

45. On or about May 31, 2019, Respondent entered into a contract with Kate Hanlon ("Hanlon") for the construction of a patio enclosure wall system to convert an existing pergola into a sunroom at the Hanlon residence located at 1413 Snow Summit Drive, Reno, Nevada 89523 ("Hanlon Project") for a contract amount of $18,465. Hanlon paid Respondent a total of $7,386 towards the contract amount.

46. The completion date per the contract was to be October 30, 2019.

46. No work has been performed on the project.

47. On or about October 15, 2019, Hanlon contacted the local building department and was told no permit had been applied for. Hanlon then contacted Respondent and requested a refund of her monies. Respondent agreed and sent her a check for $5,861.50 leaving a total amount still owed of $1,524.50.

48. On or about November 5, 2019, Hanlon filed a workmanship/abandonment complaint with the Board against Respondent.

49. On or about November 12, 2019, Respondent was notified to provide this office copies of the bid, contract and written scope of work, subcontracts, change orders and permits for the project located at 1413 Snow Summit Drive Reno, Nevada.

50. This information was to be received by November 22, 2019.

51. Respondent failed to provide the requested documents.

52. Respondent failed to provide a financial statement or other evidence of his financial responsibility.

53. Richard Garriga Taylor is the President, CMS and Trade for Reno Patio & Fireplaces, license numbers 56075, 71993 and 72332.

2.0 Conclusions of Law

The administrative law judge makes the following conclusions of law based upon Nevada law and the findings of fact:

    1.    The Board's administrative proceedings are governed by the Administrative Procedures Act, codified as NRS Chapter 233B, as well as NRS Chapter 624 and Chapter 624 of the Nevada Administrative Code.

    2.    Pursuant to NRS 233B.123, the burden of proof is upon the Board to prove the elements of each cause of action by a preponderance of the evidence standard.

    3.    Pursuant to NRS Chapter 624 and NAC Chapter 624, the Board has jurisdiction to take disciplinary action against a contractor as provided in NRS 624.300 to 624.305, inclusive.

First alleged violation: NRS 624.301(5) Failure to comply with terms of a construction contract

    4.    Under NRS 624.301(5), a licensed contractor may be disciplined for failing to comply without legal excuse to comply with the terms of a construction contract.

    5.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to comply with terms of the Kwok construction contract.

    6.    Respondent offered no legal justification for failing to comply.

    7.    Therefore, Respondent violated NRS 624.301(5) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Second alleged violation NRS 624.301(2) Abandonment of a construction project

    8.    Under NRS 624.301(2), a licensed contractor may be disciplined for abandonment of a construction project when the percentage of the project completed is less than the percentage of the total price of the contract paid to the contractor at the time of abandonment.

    9.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent abandoned a construction project when the percentage of the project completed is less than the percentage of the total price of the contract paid to the contractor at the time of abandonment.

    10.    Respondent offered no legal justification for the abandonment of the Kwok project.

    11.    Therefore, Respondent violated NRS 624.301(2) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Third alleged violation: NRS 624.301(1) Abandonment

12.    Under NRS 624.301(1), a licensed contractor may be disciplined for abandonment without legal excuse of any construction project or operation.

13.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent abandoned the Kwok project.

14.    Respondent offered no legal justification for abandonment of the Kwok project.

15.    Therefore, Respondent violated NRS 624.301(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Fourth alleged violation: NRS 624.301(4) Failure to prosecute

16.    Under NRS 624.301(4), a licensed contractor may be disciplined for failure without legal excuse to prosecute a construction project or operation with reasonable diligence.

17.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to prosecute the Kwok project with reasonable diligence.

18.    Respondent offered no legal justification for failure to prosecute the Kwok project with reasonable diligence.

19.    Therefore, Respondent violated NRS 624.301(4) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Fifth alleged violation: NRS 624.3012(1) Diversion of money

20.    Under NRS 624.3012(1), a licensed contractor may be disciplined for diverting money or property received for the completion of a specific construction project or for a specified purpose in the completion of any construction project or operation to any other construction project or operation, obligation or purpose.

21.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent diverted money or property received for the completion of a specific construction project.

22.    Respondent offered no legal justification for diverting money.

23.    Therefore, Respondent violated NRS 624.3012(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Sixth alleged violation: NRS 624.3015(2) Bidding or contracting in excess of limit

24.    Under NRS 624.3015(2), a licensed contractor may be disciplined for bidding or contracting for a sum for one construction contract or project in excess of the limit placed on the license by the Board.

25.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent contracted with Kwok for the sum of $60,771, in excess of the $50,000.00 limit of his license.

26.    Respondent offered no legal justification for contracting in excess of the limit placed on the license by the Board.

27.    Therefore, Respondent violated NRS 624.3015(2) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Seventh alleged violation: NRS 624.302(6) Failure to comply

28.    Under NRS 624.302(6), a licensed contractor may be disciplined for failing to comply with a written request by the Board or its designee for information or records, or obstructing or delaying the providing of such information or records.

29.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to comply with a written request by the Board.

30.    Respondent offered no legal justification for failing to comply.

31.    Therefore, Respondent violated NRS 624.302(6) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Eighth alleged violation: NRS 624.301(5) Failure to comply

32.    Under NRS 624.301(5), a licensed contractor may be disciplined for failing to comply without legal excuse on the part of a licensee to comply with the terms of a construction contract.

33.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to comply with terms of the Mattice contract.

34.    Respondent offered no legal justification for failing to comply.

35.    Therefore, Respondent violated NRS 624.301(5) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Ninth alleged violation: NRS 624.301(1) Abandonment

36.    Under NRS 624.301(1), a licensed contractor may be disciplined for abandonment without legal excuse of any construction project or operation.

37.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent abandoned the Mattice project.

38.    Respondent offered no legal justification for abandonment of the Mattice project.

39.    Therefore, Respondent violated NRS 624.301(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Tenth alleged violation: NRS 624.301(2) Abandonment of a construction project

40.    Under NRS 624.301(2), a licensed contractor may be disciplined for abandonment of a construction project when the percentage of the project completed is less than the percentage of the total price of the contract paid to the contractor at the time of abandonment.

41.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent abandoned the Mattice project.

42.    Respondent offered no legal justification for abandonment of the Mattice project.

43.    Therefore, Respondent violated NRS 624.301(2) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Eleventh alleged violation: NRS 624.301(4) Failure to prosecute

44.    Under NRS 624.301(4), a licensed contractor may be disciplined for failure without legal excuse to prosecute a construction project or operation with reasonable diligence.

45.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to prosecute the Mattice project with reasonable diligence.

46.    Respondent offered no legal justification for failure to prosecute the Mattice project with reasonable diligence.

47.    Therefore, Respondent violated NRS 624.301(4) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

/ / /

Twelfth alleged violation: NRS 624.3012(1) Diversion of money

48.    Under NRS 624.3012(1), a licensed contractor may be disciplined for diverting money or property received for the completion of a specific construction project or for a specified purpose in the completion of any construction project or operation to any other construction project or operation, obligation or purpose.

49.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent diverted money or property received for the completion of a specific construction project.

50.    Respondent offered no legal justification for diverting money.

51.    Therefore, Respondent violated NRS 624.3012(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Thirteenth alleged violation: NRS 624.301(5) Failure to comply

52.    Under NRS 624.301(5), a licensed contractor may be disciplined for failing to comply without legal excuse on the part of a licensee to comply with the terms of a construction contract.

53.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to comply with the terms of the Cossavela contract.

54.    Respondent offered no legal justification for failing to comply with the terms of the Cossavela contract.

55.    Therefore, Respondent violated NRS 624.301(5) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Fourteenth alleged violation: NRS 624.301(1) Abandonment

56.    Under NRS 624.301(1), a licensed contractor may be disciplined for abandonment without legal excuse of any construction project or operation.

57.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent abandoned the Cossavela project.

58.    Respondent offered no legal justification for abandonment of the Cossavela project.

59.    Therefore, Respondent violated NRS 624.301(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Fifteenth alleged violation: NRS 624.301(4)) Failure to prosecute

60.    Under NRS 624.301(4), a licensed contractor may be disciplined for failure without legal excuse to prosecute a construction project or operation with reasonable diligence.

61.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to prosecute the Cossavela project with reasonable diligence.

62.    Respondent offered no legal justification for failure to prosecute the Cossavela project with reasonable diligence.

63.    Therefore, Respondent violated NRS 624.301(4) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Sixteenth alleged violation: NRS 624.3012(1) Diversion of money

64.    Under NRS 624.3012(1), a licensed contractor may be disciplined for diverting money or property received for the completion of a specific construction project or for a specified purpose in the completion of any construction project or operation to any other construction project or operation, obligation or purpose.

65.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent diverted money or property received for the completion of a specific construction project.

66.    Respondent offered no legal justification for diverting money.

67.    Therefore, Respondent violated NRS 624.3012(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Seventeenth alleged violation: NRS 624.302(6) Failure to comply

68.    Under NRS 624.302(6), a licensed contractor may be disciplined for failing to comply with a written request by the Board or its designee for information or records, or obstructing or delaying the providing of such information or records.

69.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to comply with a written request by the Board or its designee for information or records.

70.    Respondent offered no legal justification for failing to comply.

-11-

71.    Therefore, Respondent violated NRS 624.302(6) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Eighteenth alleged violation: NRS 624.301(5) Failure to comply

72.    Under NRS 624.301(5), a licensed contractor may be disciplined for failing to comply without legal excuse on the part of a licensee to comply with the terms of a construction contract.

73.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that the Respondent failed to comply with the terms of the Festinese contract.

74.    Respondent offered no legal justification for failing to comply with the terms of the Festinese contract.

75.    Therefore, Respondent violated NRS 624.301(5) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Nineteenth alleged violation: NRS 624.301(1) Abandonment

76.    Under NRS 624.301(1), a licensed contractor may be disciplined for abandonment without legal excuse of any construction project or operation.

77.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent abandoned the Festinese project.

78.    Respondent offered no legal justification for abandonment of the Festinese project.

79.    Therefore, Respondent violated NRS 624.301(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twentieth alleged violation: NRS 624.301(2) Abandonment

80.    Under NRS 624.301(2), a licensed contractor may be disciplined for abandonment of a construction project when the percentage of the project completed is less than the percentage of the total price of the contract paid to the contractor at the time of abandonment.

81.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent abandoned the Festinese project when the percentage of the project completed is less than the percentage of the total price of the contract paid to the contractor at the time of abandonment.

82.    Respondent offered no legal justification for abandonment of the Festinese project.

83.    Therefore, Respondent violated NRS 624.301(2) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twenty-First alleged violation: NRS 624.301(4) Failure to prosecute a construction project

84.    Under NRS 624.301(4), a licensed contractor may be disciplined for failure without legal excuse to prosecute a construction project or operation with reasonable diligence.

85.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to prosecute the Festinese project with reasonable diligence.

86.    Respondent offered no legal justification for failure to prosecute the Festinese project with reasonable diligence.

87.    Therefore, Respondent violated NRS 624.301(4) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twenty-Second alleged violation: NRS 624.3012(1) Diversion of money

88.    Under NRS 624.3012(1), a licensed contractor may be disciplined for diverting money or property received for the completion of a specific construction project or for a specified purpose in the completion of any construction project or operation to any other construction project or operation, obligation or purpose.

89.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent diverted money or property received for the completion of the Festinese project.

90.    Respondent offered no legal justification for diverting money.

91.    Therefore, Respondent violated NRS 624.3012(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twenty-Third alleged violation: NRS 624.3017(1) Substandard workmanship

92.    Under NRS 624.3017(1), a licensed contractor may be disciplined for failing to provide workmanship which is commensurate with the standards of the trade in general.

93.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to provide workmanship which is commensurate with the standards of the trade in general.

95.    Respondent offered no legal justification for failing to provide workmanship which is commensurate with the standards of the trade in general.

96.    Therefore, Respondent violated NRS 624.3017(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twenty-Fourth alleged violation: NRS 624.3013(5), as set forth in NAC 624.700(3)(a) Failure to correct

97.    Under NRS 624.3013(5), as set forth in NAC 624.700(3)(a), a licensed contractor may be disciplined for failure to comply with the Board's Notice to Correct.

98.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to comply with the Board's Notice to Correct.

99.    Respondent offered no legal justification for failing to comply.

100.    Therefore, Respondent violated NRS 624.3013(5), as set forth in NAC 624.700(3)(a) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twenty-Fifth alleged violation: NRS 624.301(5) Failure to comply with terms of construction contract

101.    Under NRS 624.301(5), a licensed contractor may be disciplined for failing to comply without legal excuse on the part of a licensee to comply with the terms of a construction contract.

102.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to comply with the terms of the Hanlon contract.

103.    Respondent offered no legal justification for failing to comply with the terms of the Hanlon contract.

104.    Therefore, Respondent violated NRS 624.301(5) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twenty-Sixth alleged violation: NRS 624.301(1) Abandonment

105.    Under NRS 624.301(1), a licensed contractor may be disciplined for abandonment without legal excuse of any construction project or operation.

106.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent abandoned the Hanlon project.

107.    Respondent offered no legal justification for abandonment of the Hanlon project.

108.    Therefore, Respondent violated NRS 624.301(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twenty-Seventh alleged violation: Abandonment

109.    Under NRS 624.301(2), a licensed contractor may be disciplined for abandonment of a construction project when the percentage of the project completed is less than the percentage of the total price of the contract paid to the contractor at the time of abandonment.

110.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent abandoned the Hanlon project when the percentage of the project completed is less than the percentage of the total price of the contract paid to the contractor at the time of abandonment.

111.    Respondent offered no legal justification for abandonment.

112.    Therefore, Respondent violated NRS 624.301(2) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twenty-Eighth alleged violation: NRS 624.301(4)) Failure to prosecute a construction project

113.    Under NRS 624.301(4), a licensed contractor may be disciplined for failure without legal excuse to prosecute a construction project or operation with reasonable diligence.

114.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to prosecute the Hanlon project with reasonable diligence.

115.    Respondent offered no legal justification for failure to prosecute the Hanlon project with reasonable diligence.

116.    Therefore, Respondent violated NRS 624.301(4) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Twenty-Ninth alleged violation: NRS 624.3012(1) Diversion of money

117.    Under NRS 624.3012(1), a licensed contractor may be disciplined for diverting money or property received for the completion of a specific construction project or for a specified purpose in the completion of any construction project or operation to any other construction project or operation, obligation or purpose.

118.    Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent diverted money or property received for the completion of the Hanlon project.

-15-

119. Respondent offered no legal justification for diverting money.

120. Therefore, Respondent violated NRS 624.3012(1) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Thirtieth alleged violation: NRS 624.302(6) Failure to comply

121. Under NRS 624.302(6), a licensed contractor may be disciplined for failing to comply with a written request by the Board or its designee for information or records, or obstructing or delaying the providing of such information or records.

122. Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to comply with a written request by the Board or its designee for information or records.

123. Respondent offered no legal justification for failing to comply.

124. Therefore, Respondent violated NRS 624.302(6) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Thirty-First alleged violation: NRS 624.3013(3) Financial responsibility

125. Under NRS 624.3013(3) a licensed contractor may be disciplined for failing to establish financial responsibility.

126. Here, credible evidence was provided by the Board's Notice of Hearing and Complaint that Respondent failed to provide the required financial statement.

127. Respondent offered no legal justification for failing to comply.

128. Therefore, Respondent violated NRS 624.3013(3) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

Thirty-Second alleged violation: NRS 624.3018(2) Joint liability

129. Under NRS 624.3018(2), a licensed contractor may be disciplined because the performance by any partnership, corporation, firm or association of any act or omission constituting a cause for disciplinary action likewise constitutes a cause for disciplinary action against any licensee who is a member, officer, director or associate of such partnership, corporation, firm or association, and who participated in such prohibited act or omission.

-16-

130.    Here, credible evidence was provided by the Board that Richard Garriga Taylor is an officer on all three licenses of Reno Patio & Fireplaces.

131.    Therefore, Richard Garriga Taylor violated NRS 624.3018(2) and discipline is warranted pursuant to NRS 624.300 and NAC 624.7251.

## 3.0 Decision and Order

Based on the foregoing Findings of Fact and Conclusions of Law, the administrative law judge decides and orders:

1.    Affordable Patios & Sunrooms, dba Reno Patio & Fireplaces, license numbers 56075, 71993 and 72332 are revoked.

2.    Respondent was fined $1,000 for each of the 1st, 2nd, 3rd, 4th, 5th 6th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 23rd, 25th, 26th, 27th, 28th, 29th Causes of Action in the Board's Complaint, $250 for each of the 7th, 17th, 30th Causes of Action in the Board's Complaint, $10,000 for each of the 18th, 19th, 20th, 21st, 22nd Causes of Action of the Board's Complaint and $500 for each of the 24th, 31st of the Board's Complaint for a total fine of $72,750.

3.    Investigative costs were not assessed due to Respondent's Chapter 7 Bankruptcy filing.

4.    ALJ Allison referred this matter to the District Attorney's office of Washoe County

5.    Respondent shall reimburse the Residential Recovery Fund for any monies paid out as a result of this action.

6.    Respondent shall make restitution to all damaged parties prior to consideration of relicensure by the Board.

7.    Administrative fines imposed shall accrue interest as defined in NRS 624.300(11).

8.    The discipline in this Default Order does not limit the Nevada State Contractors Board from imposing further discipline upon Respondent on matters not yet presented to the Board.

/ / /

/ / /

/ / /

/ / /

9.      Respondent has 30 days from receipt of this Default Order to seek judicial review

pursuant to NRS 233B.130 through NRS 233B.150 and NRS 622.410.


Dated: January 23rd, 2020.

Margi A. Grein, Executive Officer
Nevada State Contractors Board

-18-

## Certificate of Service

I hereby certify that I am an employee of the Nevada State Contractors Board and that I served

the attached **Default Order** in the above entitled matter by placing a true copy thereof, enclosed in a

sealed envelope with postage prepaid thereon, in the United States Post Office mail, addressed as follows:

Affordable Patios & Sunrooms, dba Reno Patio & Fireplaces
Richard Garriga Taylor, President and Qualified Individual
910 Glendale Avenue
Sparks, Nevada 89431          Certified Mail:          9171 9690 0935 0196 4877 74

Affordable Patios & Sunrooms, dba Reno Patio & Fireplaces
Richard Garriga Taylor, President and Qualified Individual
690 Sunshine Lane
Reno, Nevada 89502          Certified Mail:          9171 9690 0935 0196 4877 81

Chen Kwok
Kwok's Bistro
275 W. Street
Reno, Nevada 89501

Lewis Walter Mattice
11455 Verazae Drive
Reno, Nevada 89521

John Mark Cossavela
445 Kathy Terrace
Sparks, Nevada 89436

Monique M. Festinese
3347 Poco Rey Court
Sparks, Nevada 89436

Leslie Everett Zimmerman
906 Bates Avenue
Reno, Nevada 89502

Kate Hanlon
1413 Snow Summit Drive
Reno, Nevada 89523

          I declare under penalty of perjury that the foregoing is true and correct and executed this 24
day of January, 2020.

          _____
          An Employee of the Nevada State Contractors Board

# Exhibit  3

# Exhibit  3





# Exhibit 4

# Exhibit 4

| Account Name | Account Number | Date of Statement |
|---|---|---|
| Affordable Patios and Sunrooms | 732000104 | October 31, 2018 |

Personal Expenses

| Date | Amount | To Whom |
|---|---|---|
| 10/01/2018 | $1602.63 | Quicken Loans MTG Payments |
| 10/02/2018 | $400.00 | Nevada Child Support |
| 10/03/2018 | $118.00 | William Ogara DDS |
| 10/03/2018 | $ 65.45 | SiriusXM |
| 10/05/2018 | $ 9.99 | iTunes |
| 10/05/2018 | $ 89.99 | Playstation Network |
| 10/09/2018 | $ .99 | iTunes |
| 10/09/2018 | $400.00 | Somersest HOA |
| | | (Reno Patio & Fireplaces check but is the Affordable Account) |
| 10/12/2018 | $ 15.17 | GoDaddy |
| 10/17/2018 | $120.00 | Washoe County Reg. Animal S. Reno |
| 10/22/2018 | $ 15.17 | GoDaddy |
| 10/22/2018 | $ 59.99 | Playstation Network |
| 10/23/2018 | $207.66 | Direct TV |

| Affordable Patios and Sunrooms | 732000104 | November 30, 2018 |
|---|---|---|
| 11/02/2018 | $1602.63 | Quicken Loans MTG Payments |
| 11/05/2018 | $118.00 | William Ogara DDS |
| 11/27/2018 | $ 16.54 | Jimboys Tacos |

| Affordable Patios and Sunrooms | 732000104 | December 31, 2018 |
|---|---|---|
| 12/02/2018 | $1602.63 | Quicken Loans MTG Payments |
| 12/03/2018 | $ 65.45 | SiriusXM |
| 12/06/2018 | $118.00 | William Ogara DDS |
| 12/06/2018 | $ 9.99 | iTunes |
| 12/10/2018 | $ .99 | iTunes |
| 12/14/2018 | $425.00 | Somerset Owners Association |
| | | (Reno Patio & Fireplaces check but is the Affordable Account) |
| 12/24/2018 | $207.66 | Direct TV |

| Affordable Patios and Sunrooms | 732000104 | January 31, 2019 |
|---|---|---|
| 01/02/2019 | $1602.63 | Quicken Loans MTG Payments |
| 01/02/2019 | $ 52.36 | SiriusXM |
| 01/04/2019 | $118.00 | William Ogara DDS |

| 01/04/2019 | $ 79.99 | Playstation Network |
| 01/07/2019 | $ 9.99 | iTunes |
| 01/07/2019 | $ 15.00 | SiriusXM |
| 01/09/2019 | $ .99 | iTunes |
| 01/22/2019 | $ 59.99 | Playstation Network |
| 01/24/2019 | $214.66 | Direct TV |

| Affordable Patios and Sunrooms | 732000104 | February 28, 2019 |

| 02/04/2019 | $1602.63 | Quicken Loans MTG Payments |
| 02/04/2019 | $ 53.36 | SiriusXM |
| 02/05/2019 | $ 4.99 | iTunes |
| 02/06/2019 | $118.00 | William Ogara DDS |
| 02/06/2019 | $ 9.99 | iTunes |
| 02/11/2019 | $ .99 | iTunes |
| 02/25/2019 | $218.36 | Direct TV |
| 02/25/2019 | $ 99.98 | Playstation Network |

| Affordable Patios and Sunrooms | 732000104 | March 29, 2019 |

| 03/04/2019 | $1602.63 | Quicken Loans MTG Payments |
| 03/04/2019 | $ 53.36 | SiriusXM |
| 03/06/2019 | $104.02 | William Ogara DDS |
| 03/06/2019 | $ 9.99 | iTunes |
| 03/11/2019 | $ .99 | iTunes |
| 03/25/2019 | $216.51 | Direct TV |

| Affordable Patios and Sunrooms | 732000104 | April 30, 2019 |

| 04/01/2019 | $1602.63 | Quicken Loans MTG Payments |
| 04/05/2019 | $ 9.99 | iTunes |
| 04/09/2019 | $ .99 | iTunes |
| 04/24/2019 | $100.00 | Trump Make America Great Again |
| 04/29/2019 | $ 59.99 | Playstation Network |

| Affordable Patios and Sunrooms | 732000104 | May 31, 2019 |

| 05/02/2019 | $1602.63 | Quicken Loans MTG Payments |
| 05/02/2019 | $ 53.36 | SiriusXM |
| 05/06/2019 | $ 9.99 | iTunes |
| 05/09/2019 | $ .99 | iTunes |
| 05/15/2019 | $ 15.00 | SiriusXM |
| 05/28/2019 | $ 18.17 | GoDaddy |
| 05/28/2019 | $3800.00 | Normans Rare Guitars |

| Affordable Patios and Sunrooms | | 732000104 | June 28, 2019 |
|---|---|---|---|
| 06/03/2019 | $1602.63 | Quicken Loans MTG Payments | |
| 06/03/2019 | $ 53.36 | SiriusXM | |
| 06/05/2019 | $ 9.99 | iTunes | |
| 06/10/2019 | $ .99 | iTunes | |
| 06/26/2019 | $ 597.35 | Guitar Center.com | |
| 06/26/2019 | $ 885.44 | Guitar Center.com | |
| 06/26/2019 | $1,101.97 | Guitar Center.com | |
| 06/27/2019 | $ 99.00 | Guitar Zoom Inc. | |

| Affordable Patios and Sunrooms | | 732000104 | July 31, 2019 |
|---|---|---|---|
| 07/02/2019 | $1625.01 | Quicken Loans MTG Payments | |
| 07/02/2019 | $ 53.36 | SiriusXM | |
| 07/03/2019 | $ 171.61 | PayPal Shanghaiaos (high heels) | |
| 07/05/2019 | $ 1.99 | iTunes | |
| 07/05/2019 | $ 9.99 | iTunes | |
| 07/09/2019 | $ .99 | iTunes | |
| 07/15/2019 | $ 7.26 | iTunes | |
| 07/16/2019 | $ 40.00 | Clear Vision      Check # 12324 | |
| 07/23/2019 | $ 49.99 | Playstation Network | |
| 07/25/2019 | $ 49.99 | Playstation Network | |

| Affordable Patios and Sunrooms | | 732000104 | August 31, 2019 |
|---|---|---|---|
| 08/02/2019 | $1625.01 | Quicken loans MTG payments | |
| 08/02/2019 | $ 53.36 | SiriusXM | |
| 08/05/2019 | $ 1.99 | iTunes | |
| 08/09/2019 | $ .99 | iTunes | |
| 08/12/2019 | $ 14.99 | iTunes | |
| 08/19/2019 | $ 15.00 | SiriusXM | |
| 08/19/2019 | $ 54.51 | GoDaddy | |
| 08/27/2019 | $ 100.00 | Wingfield Springs Community Association   Check # 12389 | |

| Affordable Patios and Sunrooms | | 732000104 | September 31, 2019 |
|---|---|---|---|
| 09/03/2019 | $ 53.36 | SiriusMX | |
| 09/03/2019 | $ 1.99 | iTunes | |
| 09/03/2019 | $1625.01 | Quicken Loans MTG payments | |
| 09/09/2019 | $ 59.99 | Playstation | |

Affordable Patios and Sunrooms          732000104                    September 30, 2019

| | | |
|---|---|---|
| 09/09/2019 | $  .99 | iTunes |
| 09/12/2019 | $ 14.99 | iTunes |
| 09/16/2019 | $ 15.00 | SiriusXM |
| 09/26/2019 | $ 18.17 | GoDaddy |

Affordable Patios and Sunrooms          732000104                    October 31, 2019

| | | |
|---|---|---|
| 10/01/2019 | $ 56.24 | Playstation Network |
| 10/02/2019 | $  1.99 | iTunes |
| 10/02/2019 | $1625.01 | Quicken Loans MTG payments |
| 10/03/2019 | $ 53.36 | SiriusXM |
| 10/07/2019 | $ 99.99 | Playstation Network |
| 10/092019 | $  .99 | iTunes |

November 2019 – closed account

# Exhibit  5

# Exhibit  5

- Document Search
- My Documents
- Help
- About
- Privacy Policy
- Logout Public

Fictitious Firm Name - 148936

**Filing Information**

Filing Number
148936
Filing Date
12/08/2015 01:25:35 PM
Expiration Date
12/07/2020

**Business Information**

Business Name
RENO PATIO & FIREPLACES

## Owner Information

Owner/Corporate Name
AFFORDABLE PATIOS & SUNROOMS

Owner/Corporate Name
RICHARD GARRIGA TAYLOR

Reel   Page
7218   1283

Additional Information

# Exhibit  6

# Exhibit  6

- Document Search
- My Documents
- Help
- About
- Privacy Policy
- Logout Public

Fictitious Firm Name - 153095

**Filing Information**

Filing Number
153095
Filing Date
02/07/2017 11:48:35 AM
Expiration Date
02/07/2022

**Business Information**

Business Name
MILL STREET AUTO

## Owner Information

Owner/Corporate Name
RENO PATIO & FIREPLACES L.L.C.

Owner/Corporate Name
RICHARD GARRIGA TAYLOR

Reel   Page
7220   673

Additional Information