Amanda M. Perach, Esq. (NSBN 12399)
Jason B. Sifers, Esq. (NSBN 14273)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
aperach@mcdonaldcarano.com
jsifers@mcdonaldcarano.com

*Attorneys for Legacy Fire Services, LLC*

*Electronically Filed March 13, 2020*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

IN RE:

AFFORDABLE PATIOS & SUNROOMS dba RENO PATIO AND FIREPLACES,

Debtors.

Case No.: 20-50017-btb
Chapter 7

**OBJECTION TO MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS**

Hearing Date: March 13, 2020
Hearing Time: 10:00 a.m.

Legacy Fire Services, LLC ("Legacy"), by and through its undersigned counsel, file this Objection to the Motion to Sell Real Property Free and Clear of Liens [ECF No. 36] (the "Objection").

This Objection is supported by the following Memorandum of Points and Authorities, the Declaration of Michael Glover (the "Glover Decl.") filed concurrently herewith, the pleadings and papers on file herein, and the arguments of counsel to be made at the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**BACKGROUND**

1. In February 2020, Legacy began negotiating with United States Bankruptcy Trustee Christopher P. Burke (the "Trustee") regarding Legacy's potential purchase of property located at 910 Glendale Ave., Sparks Nevada (the "Property"). Glover Decl. at ¶ 4.

2. Upon information and belief, the Property was owned by the debtor or an affiliate of the debtor at the time of the bankruptcy filing.

3. During these negotiations, the Trustee and Michael Glover ("Glover"), one of

Legacy's members, visited the Property. Glover Decl. at ¶ 6. Glover had several questions about the Property that the Trustee was unable to answer. *Id*.

4. For example, while the Trustee believed there were three buildings on the Property, the Trustee was only sure that one was actually on the lot to be sold and told Glover he would have to find out about the other two. *Id*. at ¶ 7.

5. Further, the Trustee would not let Glover in these other two buildings because they were purportedly occupied by tenants. *Id*. at ¶ 8. The Trustee informed Glover he could inspect them at a later date. *Id*.

6. There were several vehicles on the property (the "Vehicles") as well as inventory including fireplaces, barbecue grills, aluminum, machinery, and tools (the "Inventory"). *Id*. at ¶ 9.

7. The Trustee was not sure whether the Vehicles or Inventory would be included in the sale of the Property. *Id*. at ¶ 10.

8. The Trustee informed Glover that he currently had an offer on the Property for approximately $1,200,000. *Id*. at ¶ 11.

9. The Trustee told Glover this offer was insufficient to cover the liens on the Property. *Id*. at ¶ 12.

10. The Trustee further told Glover that, Legacy could not take the next steps without making a better offer than the one currently on the Property. *Id*. at ¶ 13.

11. Accordingly, Legacy expressed an interest in purchasing the Property for $1,458,000 (the "Interest Letter") contingent upon certain conditions, such as a walkthrough of all the buildings and a due diligence period. *Id*. at ¶ 14.

12. Indeed, the last line of the Interest Letter instructs the Trustee to "contact [Legacy's] office to discuss possible contingencies and further terms of an agreement."

13. Based on Glover's conversations with the Trustee, Legacy's offer was contingent upon these conditions, such as the number of buildings on the Property, whether Vehicles or Inventory would be included in the sale, whether there were rent-paying tenants and what the terms of their leases were, and to arrange building inspections to ensure the Property complied

1  with all applicable code and would be adequate for Legacy's intended uses.  *Id*. at ¶ 16.

2      14.    An employee of Legacy received a letter from the Trustee (the "<u>Trustee's Letter</u>")
3  stating he was accepting the offer and had set a hearing for March 13, 2020 at 10:00 a.m. for the
4  Court to approve the sale of the Property to Legacy.  *Id*. at ¶ 17.

5      15.    Legacy was never served with any formal notice of this hearing.  *Id*. at ¶ 18.

6      16.    The Trustee's Letter did not address any of the contingencies discussed by the
7  Trustee and Glover which were always understood to be a part of any agreement between the
8  Trustee and Legacy.  *Id*. at ¶ 19.  To confirm that the contingencies would be incorporated into
9  any written agreement between the Trustee and Legacy, Glover attempted to contact the Trustee,
10 but was unsuccessful.  *Id*.

11     17.    The Trustee's Letter said the Trustee's attorney would contact Legacy regarding
12 next steps.  However, the Trustee's attorney never contacted Legacy. *Id.* at ¶ 20.

13     18.    Finally, on March 12, 2020, Legacy's counsel reached out to the Trustee's counsel
14 to confirm that a due diligence period and other conditions of sale would be included in any
15 agreement formally reached between the parties, as orally agreed between Glover and the Trustee.
16 Sifers Decl. at 5.

17     19.    In response to Legacy's counsel's questions about a due diligence period in order
18 to determine the condition and fitness of the Property for Legacy's uses, Trustee's counsel claimed
19 that the Trustee intended to list the Property with a commercial real estate broker.  *Id*. at 9.

20     20.    The Trustee's counsel further stated that if Legacy still wished to purchase the
21 Property, it could bid on the Property once it was listed with the broker. *Id.* at 10.

22     21.    As a result, Legacy's counsel noted that there was not a valid agreement and,
23 therefore, Legacy would object to the Trustee's attempt to obtain court approval of the sale of the
24 Property that was based on an invalid agreement.  *Id.* at 11.

## **OBJECTION**

Legacy objects to the Motion to the extent the Trustee seeks Court ratification of any alleged contract between Legacy and the Trustee, because no valid contract exists. "Basic contract

principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). "With respect to contract formation, preliminary negotiations do not constitute a binding contract unless the parties have agreed to **all** material terms." *Id*. (emphasis added). A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite. *Id*. "[S]ubject matter, price, payment terms, quantity, and quality" are all material terms of a contract. *Matter of Estate of Kern*, 107 Nev. 988, 991, 823 P.2d 275, 277 (1991).

Here, several material terms are lacking or insufficiently certain and definite and there was no meeting of the minds. The subject matter and quantity are neither definite nor certain, because the Trustee has never informed Legacy which buildings are included with the Property, whether Vehicles and Inventory are included with the Property, and whether the Property currently has tenants renting under assignable leases.

The quality is not certain either. The parties have not confirmed whether the structures on the Property are up to code, whether the building(s) sitting on the Property will need to be substantially remodeled, or whether there are damaged utilities, fixtures, mold, or other conditions that will need attention before Legacy or another tenant could occupy the Property. Because so many material terms of the deal remain insufficiently definite and certain, there was no meeting of the minds and therefore no valid contract. Thus, to the extent any order of this Court granting the Motion could be interpreted as a ratification of a contract between Legacy and the Trustee, Legacy submits that such an order should expressly state that it does not operate to declare any alleged contract valid or serve to ratify any such alleged agreement because no such agreement exists.

**RESERVATION OF RIGHTS**

Legacy reserves all rights, claims and defenses with respect to this matter, including, but not limited to, the Court's jurisdiction over this dispute and over Legacy. Legacy does not consent to this Court's jurisdiction over it, but files this Objection as a cautionary measure to ensure that any decision from this Court does not impact its rights.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, Legacy objects to the Motion and requests that the Court (i) deny the Motion to the extent the Trustee seeks Court ratification of any contract between Legacy and the Trustee because no valid contract exists; and (ii) provide such other and further relief as is just and necessary under the circumstances.

DATED: March 13, 2020

McDONALD CARANO LLP

By: */s/ Jason Sifers*
Amanda M. Perach, Esq. (NSBN 12399)
Jason B. Sifers, Esq. (NSBN 14273)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Attorneys for Legacy Fire Services, LLC*